**SCHWENDIMAN PARTNERS, LLC, Schwendiman Partners, Gary Schwendiman, and Todd Schwendiman, Plaintiffs,**

v.

**Mark HURT, Defendant.**

**No. 4:99CV3107.**

United States District Court, D. Nebraska.

Oct. 25, 1999.

Gary J. Nedved, Keating, O'Gara Law Firm, David W. Watermeier, Morrow, Poppe Law Firm, Lincoln, NE, for Plaintiffs.

Terry W. Wittler, Cline, Williams Law Firm, Lincoln, NE, Mark T. Hurt, Abingdon, VA, for Defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This is a diversity[1] action for declaratory judgment on a contract between Plain-

---

1. Plaintiff Schwendiman Partners, LLC, is a Delaware limited liability company with its

tiffs [2] and Defendant in which Plaintiffs request that the court declare the terms of the contract, that Defendant is not entitled to any further payment under the terms of the contract, and that Plaintiffs have fully performed their obligations under the contract. This action was originally filed in the District Court of Lancaster County on March 12, 1999, but the defendant removed the suit to this court pursuant to 28 U.S.C. § 1446.

The plaintiffs manage financial portfolios, including stock funds, limited liability companies, and limited partnerships. In April 1996, Plaintiffs entered into an oral agreement with defendant Mark Hurt, pursuant to which Hurt was to "provide, buy and sell recommendations and decisions" for the funds being managed by Plaintiffs, as well as provide stock analysis and recommendations and other business services. (Filing 1, Petition ¶ 7; Filing 6, Aff. Gary Schwendiman ¶ 13.) Plaintiffs allege that under the terms of the oral agreement, Hurt was to receive 25 percent of the profits made by Plaintiffs as manager of the funds; that Hurt was paid the full amount to which he was entitled for 1995, 1996, 1997, and 1998; that "Defendant [Hurt] has claimed that the Plaintiffs are indebted to the Defendant as a result of the Agreement and the Memorandum by and between the parties in the amount of approximately $43,000.00 for 1998, and the Plaintiffs deny said indebtedness"; and that a written memorandum signed by the parties sometime after the oral agreement was entered improperly memorialized the parties' oral agreement and was not supported by consideration. (Filing 1, Petition ¶¶ 9–14.)

Defendant Hurt has filed a motion to dismiss, stay, or transfer venue (filing 3), in which he requests that Plaintiffs' declaratory judgment action be dismissed for failure to state a claim upon which relief may be granted, or because this action was filed secretly and in bad faith during negotiations between Plaintiffs and Hurt in order to deprive Hurt, the "natural plaintiff," of his choice of forum. If the case is dismissed based on the latter ground, Hurt suggests it be dismissed in favor of an action he filed on March 19, 1999, in the United States District Court for the Western District of Virginia because that action is more comprehensive and can fully resolve the issues in this case. The Virginia action involves the same parties (Mark Hurt as plaintiff and Schwendiman Partners, Gary Schwendiman, and Todd Schwendiman as defendants), and the causes of action alleged therein—breach of contract and fraud, with additional request for declaratory judgment—are based on the same dispute at issue in the case pending in this court. Alternatively, Hurt requests that this matter be transferred to the Western District of Virginia pursuant to 28 U.S.C. § 1404(a).[3] Both parties have submitted evidence in association with Hurt's motion. (Filings 4, 6, 17.)

### FACTUAL BACKGROUND

In April of 1996, Hurt and the plaintiffs entered an oral agreement in which Hurt promised to provide services as an independent contractor to the plaintiffs, in exchange for 25 percent of the annual incentive fee received by the plaintiffs on one of their funds. (Filing 6, Aff. Gary Schwendiman ¶ 13.) Hurt performed these services for Schwendiman primarily from Abingdon, Virginia. (Filing 4, Aff. Mark Hurt.) On December 2, 1996, the parties

principal office in Lincoln, Nebraska. Plaintiff Schwendiman Partners is a Nebraska general partnership with its principal office in Lincoln, Nebraska. Plaintiffs Gary and Todd Schwendiman are citizens and residents of Lincoln, Nebraska, who serve as managers and partners of the first two plaintiffs. Defendant Mark Hurt is a citizen and resident of Abingdon, Virginia.

2. Plaintiffs are referred to as "Schwendiman" at various times throughout this memorandum and order.

3. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

entered into a written services contract under which Hurt was to provide specified services and Plaintiffs were to pay him according to the formula set forth therein. Gary Schwendiman, who signed the agreement on behalf of the plaintiffs, believed the written contract to be a memorialization of the parties' prior oral agreement. (Filing 6, Aff. Gary Schwendiman ¶ 14; Filing 4, Aff. Mark Hurt ¶ 2 & Ex. A.) On May 1, 1998, a dispute arose between the parties regarding Hurt's compensation. (Filing 6, Aff. Gary Schwendiman ¶ 19; Filing 4, Aff. Mark Hurt ¶ 4 & Ex. C.) For the next ten months, the parties negotiated through a series of offers and counteroffers in an attempt to reach a new agreement regarding Hurt's compensation. The chronology of events that occurred during the contract negotiation process is as follows:

2/17/99  Plaintiffs agreed to pay $1,000 of Hurt's legal fees to complete the parties' negotiation process. (Filing 4, Ex. 2.)

2/24/99  A third-party marketer of Plaintiffs' funds e-mailed both Schwendiman and Hurt, stating he was aware that the "contract re-negotiation between Schwendiman Partners and Mark Hurt has not been finalized"; because Hurt is "the integral part of the . . . investment process, I conclude that it is my fiduciary duty to notify clients . . . that their investment is at risk"; that he could not watch his clients "funnel more of their assets into the LLC if in fact the relationship between S[chwendiman] P[artners] and Mark [Hurt] fails to continue"; and that if the contract dispute between Schwendiman and Hurt was not settled by March 1, 1999, he would notify his clients. (Filing 4, Ex. 1, Attachments.)

On the same date, Todd Schwendiman replied via e-mail (with a cc: to Mark Hurt), stating that "[o]ur relationship with Mark as Portfolio Manager has not changed at all since you have been a third party marketer with our firm"; "[w]e are currently adding massive detail to our contract with Mark to materialize our solid, long-term relationship both organizationally and financially"; "Mark is currently working with his attorney to fine tune the wording of the contract"; and "[w]e will keep you posted as to the finality of the written contract." (Filing 4, Ex. 1, Attachments.)

Also on that same date, Hurt's attorney submitted a fifth draft of a proposed contract to Schwendiman's attorney. The draft incorporated a compensation formula to which the parties had agreed in earlier drafts of the contract. (Filing 4, Ex. 1, Aff. Mark Hurt & Attachments.)

2/25/99  Gary Schwendiman called Hurt and offered to pay somewhat more than $1,000 if Hurt's legal bills ultimately exceeded $1,000. (Filing 4, Ex. 1, Aff. Mark Hurt.)

3/9/99  Because Schwendiman failed to respond to Hurt's proposed contract draft, Hurt faxed a letter to Schwendiman requesting payment for money allegedly owed Hurt under the parties' original contract. (Filing 4, Ex. 1, Aff. Mark Hurt & Attachments.)

3/10/99  In response to Hurt's proposed contract draft, Todd Schwendiman e-mailed Mark, stating: "Hi Mark: I talked to Rob today and we will have one more meeting with him on Friday and should be able to give you our final decision over the weekend [March 13 or 14]. Talk to you then." (Filing 4, Ex. 1, Aff. Mark Hurt & Attachments.)

3/12/99  At Plaintiffs' direction and without informing Hurt, Plaintiffs' attorney filed a lawsuit against Hurt in the District Court of Lancaster County, Nebraska, and sent summons and a copy of the petition to the sheriff in Abingdon, Virginia, Mark Hurt's place of residence. Because Plaintiffs told their attorney that they had drafted and were sending Hurt another contract in a final attempt to resolve the

issues with Hurt, the attorney directed the Virginia sheriff that the petition should not be served until the sheriff received further direction. (Filing 1; Filing 6, Aff. Robert Otte & Aff. Gary Schwendiman.)

According to Plaintiffs, they directed that the lawsuit be filed on March 12, 1999, because "the impass[e] with Defendant Hurt could not be closed despite [our] final efforts"; "time was of the essence because Defendant Hurt had been poisoning our relationship with others"; "Schwendiman Funds are highly regulated, and the suit would formalize the disclosure that we felt needed to be made to regulatory bodies and investors"; and Schwendiman's attorney had advised them that "the jurisdiction for any litigation was in Nebraska." (Filing 6, Aff. Robert Otte & Aff. Gary Schwendiman.)

3/13/99    Schwendiman faxed a proposed contract and cover letter to Hurt, stating the contract was "the only acceptable employment contract that we are willing to enter into with you"; if Hurt did not respond to Schwendiman regarding the contract by March 22, Schwendiman would assume Hurt no longer wished to be associated with Schwendiman; effective March 13, 1999, Hurt was relieved of his duties as Chief Portfolio Manager of the Schwendiman Funds; and "[w]e certainly understand if you choose to no longer work with us, given the difficult market environment and loss of assets in 1998." (Filing 6, Ex. J.)

3/16/99    Hurt's attorney faxed a letter to Schwendiman's attorney, demanding an accounting, charging Schwendiman with the wrongful removal of Hurt as Chief Portfolio Manager, alleging fraud and deceit in the formation of the parties' 1996 agreement, and threatening legal action to enforce the terms of the 1996 agreement if Schwendiman failed to notify Hurt's attorney immediately that Schwendiman wished to amicably resolve the dispute. (Filing 6, Ex. L & Aff. Robert Otte.)

3/17/99    Schwendiman directed its attorney to serve Hurt with summons. (Filing 6, Aff. Robert Otte.)

3/18/99    Schwendiman's attorney advised the sheriff in Abingdon, Virginia, to serve Mark Hurt with summons and the petition, and service was perfected on this date. (Filing 6, Aff. Robert Otte.) This was the first time Hurt learned of Schwendiman's lawsuit against him or of Schwendiman's intent to sue. (Filing 4, Aff. Mark Hurt.)

3/19/99    Mark Hurt filed a lawsuit alleging breach of contract and fraud against Schwendiman in the United States District Court for the Western District of Virginia. (Filing 4, Aff. Mark Hurt & Attachments.)

### *DISCUSSION*

■■■    When parallel litigation has been instituted in separate courts, resulting in concurrent jurisdiction over a dispute, " 'the first court in which jurisdiction attaches has priority to consider the case.' " *Northwest Airlines, Inc. v. American Airlines, Inc.,* 989 F.2d 1002, 1005 (8th Cir. 1993) (quoting *Orthmann v. Apple River Campground, Inc.,* 765 F.2d 119, 121 (8th Cir.1985)). However, this so-called "first-filed" rule is not intended to be inflexible, mechanical, or rigid, and is to be applied "in a manner best serving the interests of justice." *Id.* The prevailing standard is that the first-filed rule should apply unless there are compelling circumstances suggesting otherwise. *Id.*

■■■    "Red flags" that the Eighth Circuit Court of Appeals has found to be indicative of such "compelling circumstances" include: (1) the first-filed suit was filed after the other party gave notice of its intention to sue; and (2) the first-filed suit is for declaratory judgment, rather than for damages or equitable relief, therefore suggesting a "race to the courthouse"

in an attempt to preempt the natural plaintiff[4] from his or her choice of forum. *Id.* at 1007; *Boatmen's First Nat'l Bank of Kansas City v. Kansas Public Employees Retirement System,* 57 F.3d 638, 640–641 (8th Cir.1995). Other factors that may be considered in deciding whether to apply the first-filed rule are the period of time from the date the first-filer receives notice of a possible lawsuit by the natural plaintiff to filing of the first-filer's lawsuit; failure of the first-filer to allege that the natural plaintiff's claims are having an adverse effect on the first-filer; evidence that the first-filer promised or indicated in some manner that it would not sue, reliance on that indication by the natural plaintiff, followed by the filing of a surprise complaint by the first-filer; and which lawsuit would further the interest of speedy adjudication (i.e., which suit has further progressed). *Anheuser–Busch, Inc. v. Supreme Int'l Corp.,* 167 F.3d 417, 419 (8th Cir.1999); *Midwest Motor Express, Inc. v. Central States Southeast,* 70 F.3d 1014, 1017 (8th Cir.1995), *cert. denied,* 517 U.S. 1203, 116 S.Ct. 1704, 134 L.Ed.2d 803 (1996).

As a matter of public policy, potential plaintiffs should be encouraged to settle their claims out of court without fear that they will lose the opportunity to pick their forum should the negotiations fail. *Boatmen's First National Bank of Kansas City v. Kansas Public Employees Retirement System,* 915 F.Supp. 131, 144 (W.D.Mo.1996). The Court should encourage good faith settlement negotiations rather than rushing to the courthouse, and "[a]pplication of the first-filed rule should not penalize parties for their efforts to settle matters out of court." *Id.* *Eveready Battery Co., Inc. v. Zinc Products Co.,* 21 F.Supp.2d 1060, 1062 (E.D.Mo. 1998).

■ Consideration of the evidence in this case persuades me that compelling circumstances exist such that the first-filed rule should not apply in this case, and this matter should be dismissed in favor of the litigation filed by Mark Hurt against Schwendiman Partners; Gary Schwendiman, and Todd Schwendiman in the United States District Court for the Western District of Virginia. The evidence establishes that Schwendiman lulled Hurt into a false sense of security regarding contract negotiations by twice offering to pay a portion of Hurt's legal fees in order to complete the negotiations; by sending Hurt a copy of e-mail correspondence indicating that Hurt's relationship with Schwendiman was stable, "solid," and "long-term," and that the pending contract negotiations simply involved "fine tuning" the contract language; by telling Hurt that Schwendiman would notify him on March 13 or 14, 1999, regarding Hurt's contract proposal, while secretly filing the Nebraska declaratory judgment action on March 12, 1999; and by giving Hurt until March 22, 1999, to respond to Schwendiman's counteroffer, knowing it had already filed (but not served) the Nebraska declaratory judgment action.

While Schwendiman makes much of the fact that it withheld service of the petition and summons upon Hurt until Schwendiman was sure contract negotiations were futile, Schwendiman's own evidence before this court establishes that it directed that the Nebraska lawsuit be filed on March 12, 1999, because it already had determined that "the impass[e] with Defendant Hurt could not be closed despite [our] final efforts." (Filing 6, Aff. Gary Schwendiman.) Having already filed its lawsuit in Nebraska on March 12 as a sort of insurance policy, Schwendiman continued to "negotiate" with Hurt by sending Hurt a counter-

---

4. In determining the propriety of a declaratory judgment action in circumstances like those presented in this case, the court will "realign the parties to reflect the actual controversy underlying the action" and determine who is the "natural plaintiff." *BASF Corp. v. Symington,* 50 F.3d 555, 557 (8th Cir.1995). A declaratory judgment action "aimed solely at wresting the choice of forum from the natural plaintiff will normally be dismissed." *Id.* at 558 (internal quotation marks and citation omitted).

offer and requesting a reply by March 22. While the tone of Schwendiman's counteroffer and cover letter (which relieved Hurt of his Chief Portfolio Manger duties regardless of Hurt's acceptance of the counteroffer) may have sounded less like negotiation and more like an ultimatum, Hurt was still unaware of Schwendiman's intent to litigate—instead of finish—what had, from Hurt's view, been ten months of good-faith negotiation. It was not until Hurt, through his attorney, demanded an accounting and threatened legal action on March 16, 1999, that Schwendiman directed its attorney to have Hurt served with summons immediately, thereby successfully preempting Hurt's Virginia lawsuit, which was filed on March 19, 1999.

The declaratory nature of Schwendiman's lawsuit; Schwendiman's facade of negotiation with Hurt—upon which Hurt relied—despite Schwendiman's knowledge that it had already filed its Nebraska lawsuit; and Schwendiman's service of summons upon Hurt immediately after Hurt threatened legal action convince me that the first-filed rule should not apply in this case and Hurt's motion to dismiss should be granted in favor of his action now pending in the United States District Court for the Western District of Virginia.[5] *See BASF Corp. v. Symington*, 50 F.3d 555, 558 (8th Cir.1995) (declaratory judgment action "aimed solely at wresting the choice of forum from the natural plaintiff will normally be dismissed") (internal quotation marks and citation omitted); *Delcorp, Inc. v. Dole*, 1990 WL 259681 (W.D.Mo. Nov.6, 1990) (courts have discretion to decline to hear declaratory judgment actions, particularly when the action was apparently brought in anticipation of a suit on the merits); *Solna Web Inc. v. Printed Media Servs., Inc.*, 1990 WL 357918 (W.D.Mo. Aug.31, 1990) (exercise of jurisdiction over declaratory judgment actions discretion-

ary, not mandatory, and such actions should be dismissed when apparently filed for "procedural fencing" purposes or in an attempt to deprive an injured party of its choice of forum); *Koch Engineering Co., Inc. v. Monsanto Co.*, 621 F.Supp. 1204 (E.D.Mo.1985) (declaratory judgment action dismissed when suit was simply a race to the courthouse and when purposes of the Declaratory Judgment Act, 28 U.S.C. § 2201—to minimize danger of avoidable loss, avoid unnecessary accrual of damages, and provide early adjudication of dispute without waiting for an adversary to file an action—were not furthered).

Accordingly,

IT IS ORDERED:

1. Defendant Hurt's motion to dismiss (filing 3) is granted without prejudice to Plaintiffs' right to file appropriate counterclaims in the litigation initiated by Mark Hurt against Schwendiman Partners, Gary Schwendiman, and Todd Schwendiman in the United States District Court for the Western District of Virginia, Civil Action No. 1:99–CV–0037;

2. Defendant Hurt's motion to stay or transfer venue (filing 3) is denied as moot; and

3. Judgment shall be entered by separate document.

---

5. As there is no evidence of the status of the Virginia action, I cannot compare the progression of the Nebraska and Virginia actions.